# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| ANTHONY LYSAK, individually; and TAWNY LYSAK, individually and derivatively as a member of Q2I, LLC, and WILLIAM A. MCNAMARA, individually and derivatively as a member of Q2I, LLC,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>STEVEN JENKINS, an individual, Q2i, LLC (NH), 315 Pleasant St., LLC, and DOES 1-10, inclusive,<br><br>　　　　　　Defendants. | Case No. |

## COMPLAINT AND JURY DEMAND

Plaintiff Anthony Lysak ("Mr. Lysak"), Tawny Lysak ("Mrs. Lysak"), William A. McNamara ("McNamara") (Mr. and Mrs. Lysak and McNamara are collectively referred to as, the "Plaintiffs"), complain and allege against Defendant Steven Jenkins ("Mr. Jenkins"), and Does 1 through 10 (collectively with Mr. Jenkins, "Defendants") as follows:

### Parties and Related Entities

1. Mr. Lysak is an individual residing in Brighton, England.

2. Mrs. Lysak is an individual residing in San Diego, California, the wife of Mr. Lysak, and a current member of Q2i.

3. McNamara is an individual residing in Bellevue, Washington and a current member of Q2i.

4. Q2i LLC (NH) is, and at all times mentioned herein was, a New Hampshire limited liability company with its principal place of business in the State of New Hampshire.

5. 315 Pleasant St., LLC ("Massachusetts Q2i") is, and at all times mentioned herein was, a Massachusetts limited liability company. Massachusetts Q2i was formed on July 9, 2019 with the name Q2i Technology, LLC, and was renamed seven days later, on July 16, 2019, to 315

Pleasant St., LLC. Massachusetts Q2i's current principal place of business is in the State of New Hampshire.

6. Mr. Jenkins is, and at all times mentioned herein was, a resident of the City of Rindge, in the State of New Hampshire. Mr. Jenkins is currently the manager and CEO of Q2i.

7. Plaintiffs are presently unaware of the true names and capacities of the defendants sued herein as Does 1 through 10, inclusive. Plaintiffs are informed and believe and, on that basis, allege that each of the fictitiously named Doe defendants are liable as hereinafter alleged, and that Plaintiffs' rights against such fictitiously named Doe defendants arise from such liability. Plaintiffs will seek leave of court to amend this Complaint to allege said defendants' true names and capacities when the same have been ascertained.

## Jurisdiction and Venue

8. Subject matter jurisdiction is appropriate in this Court pursuant to 28 U.S.C. § 1332.

9. Venue is proper in this matter pursuant to 28 U.S.C. §1391 because Q2i is domiciled in Cheshire County, New Hampshire.

## Factual Allegations

10. Mr. Lysak and Mr. Jenkins have been close friends for 25 years.

11. Since 2008, they have partnered on various business and property-related ventures.

12. In 2012, Mr. Jenkins left London to work in the United States under a work visa while Mr. Lysak remained in the UK.

13. In 2016, Mr. Lysak and Mr. Jenkins orally agreed to become partners in a start-up business in the United States, which would develop software and applications for use by health care providers and would later be called Q2i.

14. Under this partnership, Mr. Lysak and Mr. Jenkins orally agreed to contribute $30,000 as startup capital for Q2i.

15. Mr. Lysak and Mr. Jenkins agreed that $10,000 of their individual $30,000 contributions constituted an equity investment to Q2i, while the remaining $20,000 constituted loans to Q2i.

16. Mr. Lysak and Mr. Jenkins further agreed that pursuant to their $10,000 equity investments, each would own a 50% interest in Q2i.

17. Based on Mr. Lysak's long and close relationship with Mr. Jenkins and Mr. Jenkins' representation that the money would be directed to Q2i, Mr. Lysak paid this initial $30,000 contribution (i.e., $10,000 equity investment and $20,000 loan) to Mr. Jenkins' personal bank account.

18. In 2016, Mr. Jenkins registered Q2i as a New Hampshire limited liability company and became Q2i's manager and CEO.

19. Mr. Lysak remained in the UK as a passive investor in Q2i, so he relied on Mr. Jenkins to manage Q2i's business and finances and to advise him of Q2i's performance.

20. On numerous occasions from 2016 through 2020, Mr. Jenkins reported to Mr. Lysak that Q2i required additional funds to operate and requested loans from Mr. Lysak, which were to be used for the benefit of Q2i.

21. Most if not all of these loans were requested by Mr. Jenkins just days before the funds were purportedly needed.

22. Additionally, Mr. Jenkins repeatedly advised Mr. Lysak that Q2i would fail if Mr. Lysak did not continue providing money to Q2i.

23. Despite the substantial sums requested, Mr. Lysak relied on Mr. Jenkins' representations and agreed to make multiple loan payments for the benefit of Q2i.

24. On several occasions from 2016 through 2020, Mr. Jenkins also claimed he contributed substantial sums of his own funds to Q2i.

25. Indeed, Mr. Jenkins has repeatedly claimed he contributed more in loans to Q2i than the total amount in loans that Mr. Lysak made to him for Q2i's benefit.

26. Notably, Mr. Jenkins has not provided Mr. Lysak with complete records reflecting the total funds that Mr. Jenkins' purportedly contributed to Q2i.

27. Nonetheless, and based on their close relationship of trust, Mr. Lysak reasonably relied on Mr. Jenkins representations as justification to continue making loans to Mr. Jenkins for

Q2i's benefit.

28. From 2016 through 2019, Mr. Lysak made many loan payments for Q2i's benefit (the "Loan Payments").

29. The Loan Payments ranged from $30,000 to $100,000 each and totaled $450,000.

30. Pursuant to Mr. Lysak's agreement with Mr. Jenkins, each of the Loan Payments were solely meant to contribute to Q2i's growth or to pay for its necessary expenses, such as monthly payroll expenses.

31. Based on their close relationship of trust, Mr. Lysak made the Loan Payments directly into Mr. Jenkins' personal bank account, with Mr. Jenkins' oral agreement that they would only be used to benefit Q2i and not to Mr. Jenkins personally.

32. Mr. Jenkins also orally agreed to pay back each of the Loan Payments at a future date once Mr. Lysak made a demand for their repayment.

33. Mr. Jenkins has reaffirmed his obligation to repay the Loan Payments in multiple subsequent communications, and the debt is verified on email communication as well as orally with mutual friends.

34. As Mr. Jenkins continued to make sporadic requests for loans from Mr. Lysak, Mr. Lysak made several requests for Mr. Jenkins to work with him to prepare and execute an operating agreement, which would confirm that each held a 50% membership interest in Q2i.

35. Mr. Jenkins largely ignored these requests, and an operating agreement remains to be executed.

36. Indeed, in apparent repudiation of Mr. Lysak and Mr. Jenkins' original agreement that each held a 50% interest in Q2i, Mr. Jenkins has since made several conflicting representations about who holds what percentage of membership interest in Q2i.

37. After Q2i was formed in 2016, Mr. Jenkins has retroactively sought to claim a greater than 50% interest in Q2i.

38. Mr. Jenkins has claimed that he is entitled to greater equity in Q2i because he purportedly contributed more funds to Q2i than Mr. Lysak.

39. However, this claim conflicts with Mr. Lysak and Mr. Jenkins' original agreement that both held a 50% interest in Q2i based on their initial $10,000 investment payment in 2016.

40. At no point did Mr. Lysak ever agree to alter the terms of this fifty-percent split in Q2i with Mr. Jenkins.

41. In or around January 2019, Mr. Jenkins also claimed he was entitled to a greater interest in Q2i in the form of sweat equity based on the time and effort he purportedly contributed to managing Q2i.

42. At no point did Mr. Lysak or Mr. Jenkins ever discuss or make any agreement regarding sweat equity for Q2i.

43. Similarly, Mr. Jenkins has repeatedly suggested that the salary he believes he is owed for managing Q2i impacts the parties' respective equities in Q2i.

44. To be clear, Mr. Lysak and Mr. Jenkins never agreed to any modification of the parties' respective interests in Q2i.

45. Mr. Jenkins first requested a salary in 2019 and total earnings including all NETbuilder LLC earnings at a $100,000 level were discussed but never finalized.

46. Escalated debates continued in 2020 and there are emails that demonstrate that Mr. Lysak and Mr. Jenkins were in disagreement.

47. Mr. Jenkins' claims regarding sweat equity and his salary are improper and invalid attempts to retroactively claim more interest in Q2i, in contravention of the terms of his original agreement with Mr. Lysak that each held a 50% interest.

48. Mr. Jenkins has also offered membership interest in Q2i to third parties without Plaintiffs' prior knowledge or consent.

49. For example, on or about May 18, 2018, Mr. Jenkins unilaterally offered a third party, McNamara, an 8% membership interest in Q2i as consideration for McNamara's employment as Q2i's Chief Technology Officer.

50. McNamara agreed to this offer, and on or about March 9, 2019, Mr. Jenkins and McNamara executed an agreement reflecting the same (the "McNamara Agreement").

51. Mr. Lysak never consented to this agreement and was not even informed about it until after it was executed.

52. Further, the McNamara Agreement does not even refer to Plaintiffs' 50% interest in Q2i.

53. Rather, it lists Mr. Jenkins and McNamara as having a 92% and 8% interest in Q2i, respectively.

54. In or around May 2019, Mr. Lysak sought to transfer his interest in Q2i to Mrs. Lysak and attempted to work with Mr. Jenkins to get a clear written operating agreement in place.

55. Specifically, Plaintiffs sought to memorialize Q2i's membership interests as follows: Mrs. Lysak with 46%; Mr. Jenkins with 46%; and McNamara with 8%.

56. Mr. Jenkins orally agreed to this distribution of membership interests.

57. Thus, with Mr. Jenkins' knowledge and approval, Mr. Lysak transferred his membership interest in Q2i to Mrs. Lysak.

58. However, Mr. Jenkins stalled efforts to finalize an agreement, and an agreement was never executed.

59. Notably, in the same month that Mr. Lysak sought to have this agreement finalized, Mr. Jenkins executed the McNamara Agreement, in which Mr. Jenkins agreed to transfer 8% of the 100% membership interest he claimed he held in Q2i to McNamara.

60. On or about February 2, 2021, Mrs. Lysak executed a Paycheck Protection Program loan application (the "Loan Application") as a member of Q2i.

61. The Loan Application was prepared by one of Q2i's employees working under Mr. Jenkins and listed Mrs. Lysak as a member of Q2i with a 49% membership interest.

62. The Loan Application also listed Mr. Jenkins' elderly neighbor, Paul DeSalvo, as Q2i's second member with a 51% membership interest.

63. Mr. Jenkins never explained to Plaintiffs why Mrs. Lysak was only listed as having a 49% membership interest, why Mr. DeSalvo was listed as a member and not Mr. Jenkins himself, or why the Loan Application failed to acknowledge the 8% membership interest that Mr. Jenkins

uniliterally offered to Mr. McNamara on or about March 9, 2019.

64. On a telephone call Mr Jenkins told Mr Lysak that he had sought legal advice and transferred his shares under trust to his neighbor and all was fine.

65. Mr. Lysak did not clarify but assumed that Mr. Jenkins had sought the consent and did the same with McNamara's shares.

66. In addition, by email, Mr. Jenkins has confirmed Mrs. Lysak's 49% interest.

67. Upon information and belief, Plaintiffs believe that Mr. Jenkins has offered membership interest in Q2i to other third parties—including Q2i's new Chief Technology Officer, Tom Keen—without Plaintiffs' prior knowledge or consent, thereby further diluting Mrs. Lysak's interest in Q2i.

68. Mr. Lysak also made several requests for Mr. Jenkins to assist with preparing a written agreement regarding the Loan Payments amounting to over $450,000 that Mr. Lysak provided to Mr. Jenkins for Q2i's benefit.

69. Mr. Jenkins has similarly stalled in responding to these requests, and a loan agreement remains to be executed.

70. Mr. Jenkins has never disputed the loan amount so this remains a personal debt from Mr. Jenkins to Mr. Lysak which has been increasing at 10% annually since 2019.

71. The current amount outstanding is over $600,000.

72. Upon information and belief, portions of the Loan Payments were not used to benefit Q2i and were instead used to personally benefit Mr. Jenkins and his personal business ventures.

73. In particular, upon information and believe, Plaintiffs allege that Mr. Jenkins has transferred portions of the Loan Payments into his personal services company, NETbuilder LLC ("NETbuilder"), or used personally, to the detriment of Mr. Lysak and Q2i.

74. Plaintiffs cannot determine the full extent of Mr. Jenkins' misappropriation of the Loan Payments because Mr. Jenkins has failed to provide records sufficient to show how the Loan Payments were used, despite Mr. Lysak's numerous requests for same.

75. Additionally, per publicly filed documents and without Plaintiffs' knowledge or approval, Mr. Jenkins registered a domestic Massachusetts limited liability company named "Q2i Technology, LLC ("Massachusetts Q2i") on July 9, 2019, which is distinct from the original Q2i entity that was formed in New Hampshire in 2016.

76. Mr. Jenkins was originally registered as the manager of Massachusetts Q2i. On July 16, 2019, seven days after Massachusetts Q2i was formed, it was renamed to 315 Pleasant St., LLC and its manager was changed to James Helminen, a resident of New Hampshire.

77. In a similar pattern, per publicly filed documents and without Plaintiffs' knowledge or approval, Mr. Jenkins registered a domestic California limited liability company also named "Q2i LLC" ("California Q2i") on March 14, 2022, which is distinct from the original Q2i entity that was formed in New Hampshire in 2016.

78. Mr. Jenkins is registered as the manager and Chief Executive Officer of California Q2i, and the 100% owner.

79. Upon information and belief, Plaintiffs allege that Mr. Jenkins formed Massachusetts Q2i and California Q2i as instruments to move valuable assets out of Q2i and to default on the Loan Payments of over $450,000 that Mr. Lysak paid to Mr. Jenkins for Q2i's benefit.

80. Additionally, upon information and belief, Plaintiffs allege that portions of the Loan Payments that were meant to benefit Q2i were instead diverted to Massachusetts Q2i and California Q2i.

81. Mr. Jenkins represented to McNamara that not only would he be transferred 8% of the ownership of Q2i, but that his ownership stake would ensure that he would remain involved and help increase the value of the company.

82. When McNamara reviewed the McNamara Agreement before accepting, he noted the election clause that specified the manager would hold an annual meeting.

83. As Mr. Jenkins verbally informed McNamara that Mr. Lysak and Mr. Jenkins held equal ownership percentages in Q2i, McNamara believed that he hold the tiebreaker vote, if

necessary, (at least until additional funding).

84. By not holding the meetings, Jenkins and Q2i obscured the expenditures (and income), which destroyed the value of the company by preventing other owners (like Mr. Lysak, McNamara) from applying their knowledge and wisdom.

85. Mr. Jenkins also took McNamara's position and appointed a replacement CTO over his objection.

86. When Mr. Jenkins indicated this was not negotiable, McNamara turned down an alternate position, but Mr. Jenkins then publicly assigned that position to him, including on the public webpage.

87. By assigning ownership to his neighbor, Mr. Jenkins further diluted Mrs. Lysak and McNamara's ownership, as well as violating the Operating Agreement, by not notifying McNamara first given his right of first refusal.

### Count I: Breach Of Oral Contract

**(By Mr. Lysak, Individually, Against Mr. Jenkins and Does 1-10)**

88. Plaintiff incorporates by reference each and all of the allegations contained above as if fully set forth herein.

89. From on or around 2016 through April 5, 2021, Mr. Lysak entered into a series of valid, enforceable, and binding oral contracts with Mr. Jenkins.

90. Under the terms of these oral agreements, Mr. Lysak agreed to make Loan Payments to Mr. Jenkins, and Mr. Jenkins agreed use the Loan Payments solely for Q2i's benefit, including to grow Q2i's business and/or to pay for Q2i's necessary business expenses.

91. Mr. Jenkins further orally agreed to pay back the Loan Payments at a future date once Mr. Lysak made a demand for their repayment.

92. In total, Mr. Lysak made separate Loan Payments to Mr. Jenkins, which amounted to at least $450,000 in loans.

93. Mr. Lysak fully performed all conditions, covenants, and promises required of him under the loan agreements referenced herein.

94. Mr. Lysak is informed and believes on that basis alleges that Mr. Jenkins materially breached these oral loan agreements by failing to use the Loan Payments to solely benefit Q2i and has failed to pay them back to Mr. Lysak upon his demand.

95. As a direct and proximate result of Mr. Jenkins' breach, Mr. Lysak has suffered and is entitled to damages in the amount of at least $450,000, plus interest currently at a total amount exceeding $600,000.

96. In addition, Mr. Lysak is entitled to 50% of all dividend and other income or other income that Mr. Jenkins has enjoyed from Q2i and his personal services company, NETbuilder LLC, a company for which he no longer has naming rights.

### Count II: Fraud

**(By Mr. Lysak, Individually, Against Mr. Jenkins and Does 1-10)**

97. Plaintiff incorporates by reference each and all of the allegations contained above as if fully set forth herein.

98. Mr. Lysak is informed and believes and on that basis alleges that Mr. Jenkins falsely represented to Mr. Lysak that the Loan Payments Mr. Lysak provided to Mr. Jenkins were being used solely to benefit Q2i.

99. Mr. Lysak is informed and believes and on that basis alleges that Mr. Jenkins knew this representation was false when he made it.

100. Mr. Lysak is informed and believes and on that basis alleges that Mr. Jenkins intended for Mr. Lysak to rely to his detriment on the foregoing representation.

101. Mr. Lysak relied to his detriment on Mr. Jenkins' misrepresentation.

102. Mr. Lysak's reliance on Mr. Jenkins' misrepresentation was justifiable because Mr. Jenkins was the manager and CEO of Q2i and someone with whom Mr. Lysak had a 25-year relationship.

103. Mr. Jenkins concealed the falsity of the representation by not telling Mr. Lysak that he would not use the Loan Payments for the benefit of Q2i.

104. Further, Mr. Jenkins has largely refused to respond to Mr. Lysak's numerous

requests for Q2i's books and records, including financial records sufficient to show that Mr. Jenkins transferred the Loan Payments from his personal bank account to Q2i or use them for Q2i's sole benefit.

105. Mr. Jenkins continued to represent to Mr. Lysak that he contributed amounts far greater than Mr. Lysak to Q2i. These representations were false. Mr. Lysak was constantly led to believe that he had put in more cash than the loans made by Mr. Lysak. He even started to offer new scenarios concerning the recategorizing of Mr. Lysak's loans as equity investments; but, the parties' agreement never changed.

106. Mr. Jenkins' intentional misrepresentation, inducing Mr. Lysak's reliance thereon, was the direct and proximate cause of Mr. Lysak's loss, which Mr. Lysak would not have sustained but for Mr. Jenkins' fraud.

107. As a result of Mr. Jenkins' intentional misrepresentation, Mr. Lysak has been damaged in an amount to be proven at trial, but not less than $450,000, plus interest, representing the amount in Loan Payments Mr. Lysak made to Mr. Jenkins to benefit Q2i.

108. Additionally, as demonstrated by the actions alleged above, Mr. Jenkins is guilty of wanton, malicious, and oppressive conduct, in conscious disregard of Mr. Lysak's rights, thereby warranting an award of enhanced compensatory damages.

## Count III: Breach of Fiduciary Duty

**(By McNamara and Mrs. Lysak, Individually and Derivatively, Against Mr. Jenkins and Does 1-10))**

109. Plaintiffs incorporate by reference each and all of the allegations contained above as if fully set forth herein.

110. At all relevant times, Mr. Jenkins owed fiduciary duties to Q2i as the manager and Chief Executive Officer of Q2i.

111. Beginning in or around May 2019, when Mr. Lysak transferred his membership interest to Mrs. Lysak, Mr. Jenkins also owed fiduciary duties to Mrs. Lysak and McNamara as members of Q2i. Mr. Jenkins specifically owed Mrs. Lysak, McNamara and Q2i the fiduciary

duties of loyalty and care in his management of Q2i and its business affairs.

112. Plaintiffs are informed and believe and on that basis allege that Mr. Jenkins breached his duties of loyalty and care to McNamara, Mrs. Lysak and Q2i by, among other things: (i) appropriating Loan Payments meant to benefit Q2i for his personal use and benefit; (ii) diverting portions of the Loan Payments to California Q2i and Massachusetts Q2i without McNamara and Mrs. Lysak's knowledge or consent; (iii) failing or refusing to account for Loan Payments he received from Mr. Lysak which were meant to benefit Q2i; (iv) failing or refusing to account for payments Mr. Jenkins purportedly made to Q2i; (v) offering membership interest in Q2i to third parties without Mrs. Lysak's prior knowledge and approval; (vi) failing to hold meetings; and (vii) obscuring expenditures and income, which destroyed value in the company.

113. As a direct and proximate result of Mr. Jenkins' breaches of these duties owed to McNamara, Mrs. Lysak and Q2i, McNamara, Mrs. Lysak and Q2i have been damaged in an amount to be proven at trial, but not less than $450,000.

114. Additionally, as demonstrated by the actions alleged above, Mr. Jenkins is guilty of wanton, malicious, and oppressive conduct, in conscious disregard of McNamara and Mrs. Lysak's rights, thereby warranting an award of enhanced compensatory damages.

## Count IV: Accounting

**(By Mr. Lysak and Mrs. Lysak, Individually, and McNamara Against Mr. Jenkins and Does 1-10)**

115. Plaintiffs incorporate by reference each and all of the allegations contained above as if fully set forth herein.

116. From on or around 2016 through April 5, 2021, Mr. Lysak loaned Mr. Jenkins in excess of $450,000 to fund Q2i's growth and necessary expenses.

117. The Loan Payments were made to Mr. Jenkins' personal bank account but were solely meant to benefit Q2i.

118. Plaintiffs are informed and believe and on that basis allege that portions of the Loan Payments were not used to benefit Q2i, and were instead used for other purposes, such as to fund

Mr. Jenkins' personal business ventures, including his company NETbuilder, or otherwise benefit Mr. Jenkins personally.

119. Plaintiffs are also informed and believe and on that basis allege that portions of the Loan Payments were diverted to Massachusetts Q2i and California Q2i without Plaintiffs' knowledge or consent.

120. Additionally, Plaintiffs are informed and believe and on that basis allege that Mr. Jenkins did not contribute a substantial amount of his own funds to Q2i as he represented to Plaintiffs.

121. Mr. Jenkins has failed and refused, and continues to fail and refuse, to provide a complete accounting of the Loan Payments and funds he purportedly loaned to Q2i.

122. Accordingly, it is necessary and appropriate for Mr. Jenkins to provide an accounting reflecting: (i) his past and ongoing use of the Loan Payments; and (ii) the funds he purportedly loaned to Q2i.

## Count V: Declaratory Relief

**(By Mrs. Lysak, Individually, Against Mr. Jenkins and Does 1-10)**

123. Plaintiff incorporates by reference each and all of the allegations contained above as if fully set forth herein.

124. An actual, present, and justifiable controversy exists between Mrs. Lysak and Mr. Jenkins as to their respective membership interests in Q2i. Mrs. Lysak contends that she holds at least a 46% interest in Q2i, whereas Mr. Jenkins has made several, conflicting representations about what membership interest he, Plaintiffs, and other third parties hold in Q2i.

125. A judicial determination of this issue is necessary for Mrs. Lysak, Mr. Jenkins, and any third party claiming a membership interest in Q2i to determine what interest they hold in Q2i, if any.

## Count VI: Breach of Contract

**(By McNamara, Against Mr. Jenkins and Q2i and Does 1-10)**

126. Plaintiff incorporates by reference each and all of the allegations contained above

as if fully set forth herein.

127. McNamara entered into the McNamara Agreement with Q2i and Jenkins on March 9, 2019.

128. Pursuant to the Operating Agreement, Q2i was required to follow Article 20 ("Transfer of Membership Interest; Admission of New Members") when assigning any and all interests of a member in the company.

129. By assigning ownership to his neighbor, Jenkins further diluted Mrs. Lysak and McNamara's ownership, as well as violating the Operating Agreement, by not notifying McNamara first given his right of first refusal.

130. Accordingly, Jenkins and Q2i have breached the terms of the McNamara Agreement, including the Operating Agreement attached thereto.

131. As a direct and proximate result of Mr. Jenkins' breaches of the agreement, McNamara, has been damaged in an amount to be proven at trial.

## **Request for Relief**

WHEREFORE, Plaintiffs pray for relief and judgment against Defendants, and each of them, as follows:

1. For compensatory or enhanced compensatory damages in an amount to be proven at trial, but in no event less than $450,000, plus interest, dividends and profits;

2. For an accounting sufficient to show (i) how all Loan Payments transferred from Mr. Lysak to Mr. Jenkins to benefit Q2i were used; (ii) how much personal funds Mr. Jenkins contributed to Q2i personally and through NETbuilder LLC; and (iii) how much of Q2i's funds were transferred to Mr. Jenkins personally or his company, NETbuilder LLC;

3. For a judicial declaration that Mrs. Lysak holds at least a 46% membership interest in Q2i;

4. For an award of prejudgment interest accruing at the maximum legal rate;

5. For an award of post-judgment interest for the maximum amount allowed by law;

6. For costs of suit herein; and

7. For such other and further relief as the Court deems just and proper.

### Request for Jury Trial

Plaintiffs request a jury trial on all claims so triable.

ANTHONY LYSAK, TAWNY LYSAK, WILLIAM A. MCNAMARA,

By its attorney,

*/s/ Kevin P. Polansky*
Kevin P. Polansky (N.H. Bar # 265419)
kevin.polansky@nelsonmullins.com
Nelson Mullins Riley & Scarborough LLP
One Financial Center, Suite 3500
Boston, MA 02111
(617) 217-4700
(617) 217-4710 (fax)

Dated: August 29, 2023